**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

GIUSEPPE CURIALE,

         Plaintiff,

v.

A CLEMENTE, INC.; ANTHONY
CLEMENTE, INC.; SOLVAY
SPECIALTY POLYMERS, USA, LLC;
SOLVAY SOLEXIS, INC.; ARKEMA,
INC.; E.I. DU PONT DE NEMOURS
& COMPANY; THE CHEMOURS
COMPANY; THE CHEMOURS COMPANY
FC, LLC; CAMDEN COUNTY ENERGY
RECOVERY ASSOCIATES LP;
CAMDEN COUNTY ENERGY RECOVERY
CORP.; FOSTER WHEELER CAMDEN
COUNTY, INC.; COVANTA CAMDEN
GP, LLC; THE 3M COMPANY; and
JOHN DOE ENTITIES #1-20

         Defendants.

No. 1:23-cv-00187-NLH-AMD

**OPINION**

---

**APPEARANCES**:

ARNOLD CARL LAKIND
SZAFERMAN, LAKIND, BLUMSTEIN, BLADER & LEHMANN, PC
QUAKERBRIDGE EXECUTIVE CENTER
101 GROVERS MILL ROAD
SUITE 200
LAWRENCEVILLE, NJ 08648

STEVE PHILLIPS
PHILLIPS & PAOLICELLI, LLP
747 THIRD AVENUE, 6TH FLOOR
NEW YORK, NY 10017

VICTORIA ELIZABETH PHILLIPS
LEVY PHILLIPS KONINGSBERG LLP
800 THIRD AVENUE
NEW YORK, NY 10022

    *Attorneys for Plaintiff*

THEODORE V. WELLS, JR.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064

    *Attorney Solvay Specialty Polymers, USA, LLC*

JOHN DAVID NORTH
MARJAN MOUSSAVIAN
GREENBAUM, ROWE, SMITH, & DAVIS, LLP
METRO CORPORATE CAMPUS ONE
PO BOX 5600
WOODBRIDGE, NJ 07095

IRENE HSIEH
JEMI GOULIAN LUCEY
GREENBAUM ROWE SMITH & DAVIS LLP
99 WOOD AVENUE SOUTH
ISELIN, NJ 08830

    *Attorneys for Arkema, Inc.*

DAVID ANDREW SCHLIER
MCCARTER & ENGLISH
405 N. KING STREET
STE 8TH FLOOR
WILMINGTON, DE 19801

RYAN A. RICHMAN
LANNY STEVEN KURZWEIL
MCCARTER & ENGLISH
100 MULBERRY STREET
FOUR GATEWAY CENTER
NEWARK, NJ 07102

    *Attorneys for Defendant E.I. du Pont de Nemours and*
    *Company, the Chemours Company, the Chemours Company FC, LLC*

DONALD J. CAMERSON, II
JAMES WYLIE CROWDER, IV
BRESSLER, AMERY & ROSS, ESQS.
325 COLUMBIA TURNPIKE
PO BOX 1980
FLORHAM PARK, NJ 07932

    *Attorneys for Defendant the 3M Company*

**HILLMAN**, District Judge

Before the Court is a Motion for Remand filed by plaintiff Giuseppe Curiale following the removal of this matter to Federal Court by Defendant E. I. du Pont de Nemours & Company ("DuPont" or "Defendant").[1]  (ECF 43).  For the reasons expressed below, Plaintiff's motion will be denied.

BACKGROUND

On December 6, 2022, Plaintiff filed his complaint in the Superior Court of New Jersey, docketed at Giuseppe (referred to here as Joseph) Curiale v. A Clemente, Inc. et al., Case No. SLM-L-000199-22.  (ECF 1 at 27 ("Compl.")).  The complaint seeks to recover for personal injuries caused by Defendants' alleged improper disposal, use, and discharge of "toxic and dangerous chemicals and substances" including "poly- and perfluoroalkyl substances ("PFAS"), dioxins, furan, lead, mercury, arsenic, and polycyclic aromated hydrocarbons ("PAHs").  (Compl. at ¶¶ 3, 72).

---

[1] There are several Defendants that are a party to this action; however, only DuPont moved to remove.  The other Defendants in this action are A. Clemente, Inc., Anthony Clemente, Inc., Solvay Specialty Polymers, USA, LLC, Solvay Solexis, Inc., Arkema, Inc., The Chemours Company, the Chemours Company FC, LLC, The 3M Company, and John Doe Entities #1-20.  The following defendants have been voluntarily dismissed: Camden County Energy Recovery Associates LP; Camden County Energy Recovery Corp.; Foster Wheeler Camden County, Inc.; Covanta Camden GP, LLC. (ECF 55).

Plaintiff contends that these chemicals cause a variety of severe diseases, persist in the environment, and that "mixed" exposures can enhance the harm experienced by those who are exposed. (Id. at ¶¶ 74-75, 171). Plaintiff alleges that his "injuries were all proximately caused" by Defendants' misconduct. (Id. at ¶ 25).

Plaintiff alleges that PFAS chemicals were produced at the West Deptford facility since before 1990. (Id. at ¶¶ 28-40). Plaintiff notes that the various chemicals alleged were produced at the Chambers Works facility starting as early as 1891. (Id. at ¶¶ 41-60). Plaintiff alleges that "Defendants knew or should have known of the health and environmental impacts of their causation chemicals." (Id. at ¶ 187). Plaintiff specifically disclaims harm arising from DuPont's government contracts. (Id. at ¶ 43).

DuPont was served the complaint on December 14, 2022 (Notice of Removal, ECF 1 at 2 ¶ 3 ("Notice of Removal")). DuPont subsequently removed this case to this Court January 13, 2023. (Id. at 22). DuPont asserted that it had basis to remove under 28 U.S.C. § 1442(a)(1). (Id. at ¶ 1). On February 13, 2023, Plaintiff filed a motion to remand and supporting brief. (ECF 43, 43-1). DuPont filed its response on March 20, 2023, (ECF 53), and Plaintiff filed his reply on March 27, 2023. (ECF 54). Plaintiff's Motion to Remand is now ripe for adjudication.

**DISCUSSION**

I.   **Standard for Motion to Remand Under 28 U.S.C. § 1442(a)(1)**

28 U.S.C. § 1442(a)(1) provides that a defendant may remove a civil suit brought in state court "to the district court of the United States for the district and division embracing the place wherein it is pending" if the defendant is "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." See 28 U.S.C. §1442(a)(1). Section 1442(a) is considered "an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n.12, (2006) (internal quotation marks and citation omitted). Therefore, a matter "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999).

It is well settled that the language of this statute is "to be liberally construed in favor of the federal forum." Cessna v. REA Energy Cooperative, Inc., 753 Fed. Appx. 124, 127 (3d Cir. 2018) (citations omitted)); see also Willingham v. Morgan,

395 U.S. 402, 406 (1969) (noting that the scope of the federal officer removal statute "is not 'narrow' or 'limited'").  This is because the purpose of § 1442(a)(1) is to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." Arizona v. Manypenny, 451 U.S. 232, 241 (1981).  "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." Willingham, 395 U.S. at 407.

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004).  In order to properly remove a case from state court to federal court on such a basis, the defendant bears the burden of showing:

> (1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

Papp v. Fore-Kast Sales Co., 842 F.3d 805, 812 (3d Cir. 2016). Moreover, a "motion to remand shares essentially identical

6

procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)" and therefore it should be "evaluated using the same analytical approach."  Id. at 811.

Subject matter jurisdiction can be challenged either through a facial or a factual attack.  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the [notice of removal], and it requires the court to consider the allegations . . . as true."  Id. (internal quotation marks and citations omitted).  In contrast, a factual attack "disputes 'the factual allegations underlying the [] assertion of jurisdiction,' and involves the presentation of competing facts."  Papp, 842 F.3d at 811 (quoting Davis, 824 F.3d at 346).  Accordingly, a factual challenge allows "a court [to] weigh and consider evidence outside the pleadings."  Davis v. Wells Fargo, 824 F.3d at 346.

This body of law as cited ordinarily applies when a defendant or defendants seek to dismiss an original complaint and either alleges that the facts asserted and accepted as true in the initial complaint fail to establish jurisdiction or that additional facts proffered by the moving Defendant establish that jurisdiction does not exist.  Here, the procedural posture of the parties is reversed in that it is the removing Defendant

that alleges that facts in its removal petition and Plaintiff's complaint when taken together establish jurisdiction and, as set forth in more detail below, it is the party contesting jurisdiction – the plaintiff – who asserts that the absence of facts in its pleadings defeats Defendant's assertion of jurisdiction.  In this procedural posture, and in light of the parties' contested view of the factual allegations asserted by the other, the Court considers this a factual challenge to jurisdiction and will, accordingly, consider the entirety of the record currently before it.

## II.  <u>Analysis</u>

Defendant DuPont asserts that the matter is removable under 28 U.S.C. § 1442(a)(1) because Defendant was acting under the direction of the United States when it manufactured some of the alleged chemicals, which "necessarily resulted in air and water discharges" that Plaintiff argues caused his personal injury. (Notice of Removal at ¶ 15).  The Court notes that neither Party argues that the removal is untimely, and therefore the Court will consider the application for removal as timely.  As set out above, Defendant here bears the burden of showing:

> (1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or

8

> relating to" an act under color of
> federal office; and (4) [the defendant]
> raises a colorable federal defense to the
> [plaintiff's] claims.

Papp, 842 F.3d at 812.  The Court will address each element in
turn.

### 1. Whether DuPont is a "person" within the meaning of the statute

While § 1442(a)(1) does not define "person" in the statute
itself, § 1 of Title I of the United States Code defines
"person" to "include corporations, companies, associations,
firms, partnerships, societies, and joint stock companies, as
well as individuals."  This definition was confirmed in Papp v.
Fore-Kast Sales Co., Inc., 842 F.3d at 812.  Plaintiff does not
dispute that DuPont is a person within the meaning of the
statute.  It is clear that DuPont constitutes a person within
the meaning of § 1442(a)(1).

### 2. Whether Plaintiff's claims are based upon the DuPont's conduct "acting under" the United States, its agencies, or its officers

Defendant summarizes multiple contracts to produce various
chemicals for use by the United States during World War II,
according to Governmental specifications, amounts, and
timelines.  Defendant explains that the chemicals include, but
are not limited to, "perfluoroheptane, perfluoroxylene,
fluorolube, uranium dioxide, anhydrous hydrofluoric acid, and
dinitrotoluene."  (ECF 53 at 25).  Defendant indicates that

pursuant to these contracts it manufactured chemicals that it had not previously produced, with the "sole purpose" of meeting "government demand and need."  (ECF 53 at 26).  Defendant alleges that these contracts are implicated due to the broad allegations in Plaintiff's complaint, where "Plaintiff did not even limit his allegations to" those specifically listed, but rather stated that his "'injuries were all proximately caused by [defendants actions relating to] chemicals including **but not limited to** the toxins described in this Complaint.'"  (ECF 53 at 13 (alteration and emphasis in original)).

The Third Circuit has "explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency."  See Papp 842 F.3d at 813 (citing In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila., 790 F.3d 457, 470 (3d Cir. 2015) ("[W]e disagree that the [defendant] is required to allege that the complained-of conduct *itself* was at the behest of a federal agency.") (emphasis in original)).  Like the federal removal statute overall, the "acting under" element must be liberally construed and cover actions that are made as "an effort to assist, or to help carry out, the duties or tasks of the federal superior." Defender Ass'n, 790 F.3d at 468 (construing "acting under" liberally).

The Third Circuit has pointed to the example of government contractors, concluding that a "private contractor acted under a federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'" Papp, 842 F.3d at 812 (quoting Defender Ass'n, 790 F.3d at 468) (alterations in original); see also Watson, 551 U.S. at 153. Where "'the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete,' that contractor is 'acting under' the authority of a federal officer" for the purposes of §1442(a)(1). Papp, 842 F.3d at 812; see also Defender Ass'n, 790 F.3d at 468-70 (discussing different ways in which an entity might "act under" a federal officer). The Third Circuit explicitly rejected the proposition that government contractors must carry any additional or "special burden" to show it was engaging in conduct at the direction of the Government as "inconsistent with both precedent and the underlying objectives of the removal statute." Id. at 812-13.

The contracts the Defendant has pointed to in support of removal demonstrate that DuPont "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." Id. at 153-54. Accordingly, Defendant has sufficiently plead that it is "acting under" the United States.

11

      3. <u>Whether Plaintiff's claims against DuPont are "for, or</u>
         <u>relating to" an act under color of federal office</u>

    Plaintiff argues that "DuPont has identified nothing in
these [government] contracts governing the discharge of waste
from its facilities."  (ECF 43-1 at 6).  DuPont responds,
quoting prior opinions on this question in this Court, that "it
is sufficient for the removing party to allege, as [DuPont] does
here, 'that the manufacturing process of certain materials [at
issue] . . . was at behest of the government and is related to
the discharges that [form] the basis of Plaintiff's complaint.'"
(ECF 53 at 28 (<u>quoting</u> <u>New Jersey Dep't of Envtl. Prot. v. E. I.</u>
<u>Du Pont De Nemours & Co.</u>, 2020 WL 2611539, at *4-5 (D.N.J. May
22, 2020); <u>see also</u> <u>New Jersey Dep't of Env't Prot. v. E.I. du</u>
<u>Pont de Nemours & Co.</u>, 2020 WL 2041382 (D.N.J. Apr. 28, 2020)).
DuPont avers that, "[a]s demonstrated by the Chambers Works
Contracts, [DuPont] produced and used at Chambers Works a
variety of Chemical Compounds which overlap with Plaintiff's
broad claims, as ordered by the United States government."  (ECF
No. 53 at 33).

    Plaintiff also argues that "there is no causal nexus
alleged between DuPont's status as a government contractor in
the 1940s and Plaintiff's injuries."  (ECF 43-1 at 23).
Plaintiff explains that DuPont does not allege facts that
demonstrate that it discharged toxic waste "as a consequence of

federal contracts," or "that such waste had the capacity to cause and did cause the disease [Plaintiff] has." (ECF 54 at 11). Plaintiff further claims that he did not "intend" to allege harm caused by chemicals related to World War II. (ECF 43-1 at 24).

Defendants respond that Plaintiff's complaint points to "broad categories" of chemicals and expands his allegations even further as "Plaintiff did not even limit his allegations to that list: 'injuries were all proximately caused by [defendants' actions relating to] chemicals including *but not limited to* the toxins described in this Complaint.'" (ECF 53 at 13 (alteration and emphasis in original)). Thus, DuPont argues that the pertinent chemicals are not limited to those enumerated, but rather the complaint may implicate approximately "1,600 chemicals Plaintiff alleges were produced, used, and discharged at Chambers Works." (Id. at 14).

Defendants also assert that despite Plaintiff's disclaimer that he did not intend to implicate chemicals made in support of war efforts, "the extraordinarily broad allegations in the Complaint speak for themselves." (Id. at 30). Specifically, "Plaintiff neglects to explain how his near limitless allegations relating to a non-exhaustive list of thousands of substances, allegedly released by EIDP's conduct across an indefinite time (going back to 1891), that persist indefinitely

13

in the environment, where even a single exposure to these substances could cause harm, do not permit [DuPont] to assert a federal officer defense based on the Chemical Compounds it made for the federal government during World War II."  (Id. at 29-30).

This element is often referred to as the "nexus" or "causation" requirement because it demands that a defendant "show a nexus, a causal connection between the charged conduct and the asserted official authority."  Acker, 527 U.S. at 431. However, Congress revised the Officer Removal Statute in 2011 to "broaden the universe of acts that enable Federal officers to remove [suits] to Federal Court."  Papp, 842 F.3d at 813 (quoting H.R. Rep. No. 112-17, pt. 1, at 6 (2011) (alteration in original).  Consistent with this expansion, the purpose of the removal statute is to ensure that this kind of federal defense is presented in a federal forum.  See Willingham, 395 U.S. at 407, ("[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court").  Following Congress' amendment, the Third Circuit has "taken a more permissive view of [the 'for or relating to'] requirement."  Papp, 842 F.3d at 813. Accordingly, the Court has found it "sufficient for there to be a 'connection' or 'association' between the act in question and the federal office."  Id.

This Court, and others in this District, have already considered a similar argument to Plaintiff's argument here that the government contracts did not instruct Defendant to discharge chemicals, and found that a defendant need not prove the "for, or relating to" element at this stage. N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co., No. 19-14765 at 2020 WL 2611539 at *5 (D.N.J. May 22, 2020); see N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co., No. 19-14767 at 2020 WL 2041382 at *2-3 (D.N.J. Apr. 28, 2020) [the "New Jersey Department of Environmental Protection Cases"].  Defendant must only demonstrate that the claims "share a substantial connection to acts done under the color of federal office."  Id.

In the New Jersey Department of Environmental Protection cases, the State of New Jersey argued that DuPont's discharge of hazardous waste was not an act under color of federal office because there was not a "direct connection or association between the unlawful act and the federal government's control over that act." N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co., 2020 WL 2041382 at *2 (emphasis in original). Specifically, they sought to distinguish between the manufacturing operation and the discharge and disposal of the results of those operations, arguing that "unless the federal contract at issue provides instructions for how hazardous substances should be discharged," there is no causal nexus

simply from a government contract requesting the production of chemicals.  Id. at *4.  This Court rejected New Jersey's argument, and determined that because the allegations "share a substantial connection to acts done under the color of federal office" Defendants had demonstrated the "for, or relating to" element for purposes of removal.

Plaintiff seeks to distinguish the instant case from the New Jersey Environmental Protection cases.  Plaintiff's core distinction is that in the New Jersey Environmental Protection cases the plaintiffs asserted a facial attack on the assertion of federal officer jurisdiction, whereas in the instant case Plaintiff is asserting a factual attack.  (ECF 43-1 at 16).  Plaintiff also argues that the New Jersey Environmental Protection cases "sought to recover damages for injuries to natural resources" in contrast with the personal injury damages asserted in the instant case.  (Id. at 15).

Finally, Plaintiff asserts that "the complaint in DEP v. DuPont specifically addressed DuPont's activities decades ago in furtherance of government war efforts"; whereas, in the instant case Plaintiff did not mention World Wars I or II, Plaintiff was born decades after World Wars I and II, and the allegations in the complaints giving rise to Defendants World War II argument will either be dismissed or removed via amendment.  (Id. at 15–17).

Plaintiff's distinction does not alter our decision that Defendant has demonstrated the "for, or relating to" claim sufficiently to support removal.  First, Plaintiff does not expand upon why the distinction between the damages sought has any bearing on whether Defendant has described that the activity alleged in the complaint was "for, or relating to" activity under the color of the federal government.

Second, whether Defendant has sufficiently presented a federal defense sufficient to establish that removal was proper and there is federal jurisdiction is not limited to what Plaintiff alleged in his complaints.  Instead, as discussed above, section 1442(a) is "an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n.12, (2006) (internal quotation marks and citation omitted).  In analyzing the federal contractor defense, "the federal-question element is met if the defense depends on federal law."  Jefferson Cty., Ala. v. Acker, 527 U.S. 423, 431 (1999).

Moreover, specific to the question of subject matter jurisdiction, "a factual challenge allows 'a court [to] weigh and consider evidence outside the pleadings.'"  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016) (citation omitted).

DuPont has presented additional facts in their removal filing in support of their proposed defense.  DuPont is entitled to put forward an alternate theory of causation, and here does so by asserting that the injuries complained of may have resulted from activity DuPont engaged in at the federal government's instruction.  Plaintiff cannot avoid this defense by disclaiming harm resulting from chemicals related to the World War II efforts.

Although Plaintiff did not list the chemicals subject to the government contracts specifically, Plaintiff plead broad allegations stating that Plaintiff's injuries were caused by "hazardous chemicals including but not limited to the toxins described in the Complaint."  (Compl. at ¶ 25).  This allegation opens the door for DuPont's government contractor defense.  Although Plaintiff disclaimed harm arising from the government contracts, Plaintiff did not disclaim allegations related to the chemicals that are subject to the government contract.  As such, his broad allegation of a nonexclusive list of chemicals may implicate the chemicals that are subject to the government contracts.

Plaintiff avers that "Plaintiff, the master of his own Complaint, expressly alleged that he was advancing no claims respecting any exposure or conduct relating to ancient World War II contracts."  (ECF 54 at 8).  However, Plaintiff only

disclaimed the government contracts, not the chemicals related to those contacts.  Plaintiff's allegations as pled in the complaint are broad enough to encompass the chemicals that are the subject of the government contracts, and as such DuPont may have a viable federal defense.

Plaintiff further looks forward.  He explains that in other similar cases this Court has dismissed claims related to the chemicals that are implicated by the World War II contracts. Thus, Plaintiff asserts that "[t]o the extent that such allegations could be said to exist in these removed cases (and they do not) they will be eliminated as a matter of amendment." (ECF 43-1 at 10).  Therefore, Plaintiff concludes, "there is no factual basis for federal officer jurisdiction."  (Id.).

However, Plaintiff cannot escape federal jurisdiction by previewing amendment that they purport they will make nor by projecting how this Court may rule on a potential, currently non-existent, motion to dismiss.  For purposes of a motion to remand, federal jurisdiction must be analyzed as of the time of removal.  See Pettit v. New Jersey, No. 09-3735, 2010 WL 1006407 at *1 (D.N.J. Mar. 17, 2010); Westmorland Hospital Assn. v. Blue Cross of Western Pa., 605 F.2d 119, 123 (3d Cir. 1979); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 593 (2013).  Defendant has sufficiently stated that the alleged conduct is "for, or relating to" an act under color of federal office.

4. Whether DuPont raises a colorable federal defense to
   Plaintiff's claims

Defendant asserts that it has colorable defenses under the "government contractor defense" as outlined in Boyle and derivative immunity as outlined in Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940).  (ECF No. 53 at 35-36).  Under Boyle, the government contractor defense is established by the defendant showing that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  Boyle, 487 U.S. at 512.  At this stage, the Court's role is "not to resolve whether the defendant has established the federal contractor defense or to resolve factual disputes, but only to ensure the existence of some competent evidence supporting a 'colorable' federal defense."  Cuomo v. Crane Co., 771 F.3d 113, 117 (2d Cir. 2014).

In this matter, the Government entered into several contracts with Defendant to manufacture chemical products. (Notice of Removal at ¶¶ 14-32).  In its removal petition, Defendant explained that the government contracts provide precise specifications.  (Id. at ¶¶ 41, 44, 48).  Defendant further explains that it complied with these specifications.

20

(Id. at ¶ 44).  Although Plaintiff argues that there were no specifications in the contracts "governing the discharge of chemical waste" (ECF 43-1 at 6), it is sufficient at this stage that Defendant has pointed to specifications requiring production of chemicals related to Plaintiff's claims.

Because Defendant has demonstrated removability under Boyle, the Court will decline to analyze Defendant's additional basis of removal under Yearsley.[2]

### CONCLUSION

For the reasons expressed above, Plaintiff's Motion to Remand this matter to state court, (ECF No. 43), will be denied.

An appropriate Order will be entered.

Date: July 5, 2023                    /s Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.

---

[2] The Court notes that in a similar matter, a judge in this District has found that DuPont has a colorable defense under Yearsley.  See New Jersey Department of Environmental Protection, et al. v. E.I. Du Pont De Nemours & Company, et al., No. 19-14676, 2020 WL 2041382, at *4-5 (D.N.J. Apr. 28, 2020) (holding that DuPont is not precluded from arguing a colorable defense under Yearsley and that Dupont raised a colorable defense under Yearsley).